Joseph D. Nohavicka, Esq. (JN2758)
Pardalis & Nohavicka, LLP
950 Third Avenue
25th Floor
New York, NY 10022
Telephone:     (212) 213.8511
Cell:              (646) 319.9764
Facsimile:      (718)777-0599
Email: jdn@pnlawyers.com
*Attorneys for Plaintiff:* KEVIN SAULNIER

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
KEVIN SAULNIER,

                                        *Plaintiff*,                              Civ. Case No.: 1:20-cv-07244

          -against-                                                          **COMPLAINT**

CYNTHIA PEZUA, PIERRE GIRAUD,
THE CITY OF NEW YORK,
THE NEW YORK CITY POLICE DEPARTMENT,
JAMES O'NEILL, as COMMISSIONER OF THE
NEW YORK CITY POLICE DEPARTMENT,
SCOTT STRINGER, as COMPTROLLER OF
THE CITY OF NEW YORK, and "JOHN DOE(S),"
NAME BEING FICTITIOUS AND INTENDED
TO REPRESENT A POLICE OFFICER(S) IN
THE EMPLOY OF THE NEW YORK CITY
POLICE DEPARTMENT, WHOSE IDENTITIES
ARE NOT YET KNOWN,

                                        *Defendants*.
-----------------------------------------------------------x

          Plaintiff, KEVIN SAULNIER (hereinafter "Plaintiff" or "Saulnier"), by his attorneys,
**PARDALIS & NOHAVICKA, LLP**, as and for his Complaint in this action, hereby alleges:

<u>**PRELIMINARY STATEMENT**</u>

          This is a civil rights action in which Saulnier seeks relief for the violation of his rights

secured by 42 USC §§ 1983, 1988, and the Fourth Amendment to the United States Constitution,

U. S. Const. amend. IV. The claims arise from an April 17, 2019 incident in which Officers of the New York City Police Department ("NYPD"), acting under the color of state law, and unprovoked, intentionally and willfully subjected Saulnier to, *inter alia*, excessive force, false imprisonment, excessive detention, false arrest, malicious prosecution, retaliatory arrest, intentional delay of arraignment, and equal protection violations. Saulnier seeks monetary damages (special, compensatory, and punitive) against Cynthia Pezua, Pierre Giraud, The City of New York, The New York City Police Department, James O'Neill, as Commissioner of The New York City Police Department,  Scott Stringer, as Comptroller of The City Of New York, and "John Doe(S)," Name Being Fictitious And Intended To Represent A Police Officer(S) In The Employ Of The New York City Police Department, Whose Identities Are Not Yet Known (collectively as "Defendants"), as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## CASE SUMMARY

2.      The case begins on City Island in the Bronx, where then-24-year-old Saulnier had the misfortune of becoming involved in a car accident on City Island Avenue with an off-duty police officer. It was a Wednesday night. The accident was at worst a 50-50 liability scenario. Saulnier suffered a broken leg and a broken ankle; the off-duty officer did not appear to be injured; however, she was taken to the hospital immediately. When NYPD arrived at the scene, they determined that Saulnier had a suspended license because of an unpaid parking ticket. [The ticket was paid by Saulnier's parent immediately -- *see* Abstract of Driving record attached as Exhibit A]. The officers at the scene were agitated because one of their own was in an accident with a civilian. With absolutely no regard for the obvious injuries he had suffered, Saulnier was cuffed by NYPD, as he lay in agony on the stretcher once he arrived at the Emergency Room at

Jacobi Hospital. Wanting to prolong Saulnier's misery, NYPD declined to issue a Desk Appearance Ticket. Saulnier was processed by NYPD at 9:00 am the next day, a Thursday, which is the only day that Jacobi conducts in-hospital arraignments. In further retaliation against Saulnier, the paperwork for processing his arrest was intentionally delayed by NYPD and, therefore, it was not ready by the end of the day, and Saulnier had to wait for the following Thursday to see a Judge. For the following seven (7) days, that is, one-hundred and ninety-two (192) hours, Saulnier remained cuffed to his bed by his wrist and his ankle, and was denied over and over again to be taken in front of a Judge. His left leg was broken in two places and he was scheduled for surgery the day after the accident. He was in excruciating pain. On Saulnier's first evening as a prisoner at Jacobi, an NYPD sergeant and an officer came to check on him -- the sergeant tightened Saulnier's cuffs. Saulnier had no prior criminal contact; lived on City Island with his family his entire life; he has a great job as a steel worker; and his blood-work came back negative toxicology.

## JURISDICTION AND VENUE

4.      This action is brought pursuant to 28 USC §1331, 42 USC §§ 1983, 1988, and the Fourth Amendment to the United States Constitution, U. S. Const. amend. IV. The amount in controversy exceeds $75,000.00 excluding interest and costs.

5.      Venue is extant within the United States District Court for the Southern District of New York in that Plaintiff is located within, and a substantial part of the events giving rise to the claim occurred within, the boundaries of the Southern District of New York.

## PARTIES

6.      Plaintiff, Kevin Saulnier, is a legal resident of the United States and at all times

relevant herein resided in Bronx County, City and State of New York.

7.      Defendant The City of New York (hereinafter "Defendant City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline, retention and conduct of all NYPD personnel. Defendant City is and was the employer of the personnel named herein as individual defendants. In addition, at all times relevant herein, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

8.      Defendant James O'Neill is and was responsible for establishing or failing to establish the policies, practices and regulations for the conduct of the NYPD.

9.      Defendant James O'Neill is and was responsible for the hiring, training, supervision, discipline, and control of all members of the NYPD.

10.     Defendant James O'Neill is sued here individually and in his official capacity.

11.     Defendant Cynthia Pezua (hereinafter "Defendant Pezua") was and is a police officer or detective employed by the NYPD, and was at all times acting in such capacity as the agent, servant, and employees of the NYPD and/or Defendant City. Defendants Pezua is sued individually and in their official capacity.

12.     Defendant Pierre Giraud ("hereinafter Defendant Giraud" and collectively with Defendant Peuza as "NYPD Officers") was an is a police officer or detective employed by the NYPD, and was at all times acting in such capacity as the agent, servant and employee of the NYPD and/or Defendant City.

13. The identities of the fictitious defendant(s) named herein as John Doe(s) are presently unknown to Plaintiff, who will seek leave to substitute their actual identities when they become known.

14. At all times relevant hereto and in all of their actions described herein, each defendant is and was acting under color of law, State authority, statute, custom, and/or usage and pursuant to their official authority. All of the actions were done intentionally or with reckless disregard to their consequences.

**NOTICE OF CLAIM**

15. Within 90 days of the incident, Plaintiff filed written Notice of Claim with the New York City Office of the Comptroller. Over thirty (30) days have elapsed since the filing of that notice, and this matter has not been settled or otherwise disposed of. [Exhibit B – Notice of Claim with receipt].

**FACTUAL ALLEGATIONS**

16. On or about April 17, 2019, Plaintiff Kevin Saulnier was involved in a car accident while he drove on City Island Avenue in Bronx, New York.

17. A car driven by Davia Clark (hereinafter "Clark"), an off-duty NYPD officer, collided with Saulnier's car as a result of a head-on collision between Saulnier and another vehicle.

18. Other off-duty officers and a seven-year-old were passengers in Clark's car.

19. As a result of the accident, Saulnier sustained a broken left leg and a broken ankle requiring surgical intervention.

20. Immediately after the accident, Clark and her passengers were taken to a hospital, though they did not appear to have any injuries.

21.     When on-duty NYPD officers, including Defendant Pezua, Shield #16818, and Defendant Giraud, Shield #8397, arrived at the scene of the accident, they determined that Saulnier's driver license was suspended because of an unpaid parking ticket.

22.     The on-duty NYPD officers then transported Saulnier to Jacobi Medical Center (hereinafter "the Hospital") personally and accompanied him on the ambulance ride to the Hospital.

23.     Once Saulnier arrived at the Hospital, he was immediately arrested and handcuffed to his stretcher in the Emergency Room.

24.     At absolutely no instance did Saulnier resisted the arrest; an arrest done on a stretcher, with the arrestee having a broken leg and a broken ankle.

25.     With no independent witness statements taken, Saulnier was charged with Reckless Driving (VTL §1212), Aggravated Unlicensed Operation of a Motor Vehicle (VTL §511(1)(a)) and Violation of the Vehicle and Traffic Law (VTL §509.1) for driving with a suspended license.

26.     The NYPD Officers did not process Saulnier until 9:00 A.M. the next morning, on April 18, 2019.

27.     Saulnier remained handcuffed to a bed in the Hospital until Thursday, April 25, 2019; that is, one-hundred and ninety-two hours held in custody without being arraigned.

28.     While Saulnier was handcuffed in the Hospital, numerous calls were made to various individuals in the Bronx District Attorney's Office and requested that Saulnier be given a Desk Appearance Ticket.

29.     While Saulnier was handcuffed in the Hospital, numerous calls were made to various individuals in the Bronx District Attorney's Office and requested that Saulnier be given

an arraignment.

30.     While Saulnier was handcuffed in the Hospital, numerous calls were made to various individuals in the 45th NYPD Precinct and requested that Saulnier be given a Desk Appearance Ticket.

31.     While Saulnier was handcuffed in the Hospital, numerous calls were made to various individuals in the 45th NYPD Precinct and requested that Saulnier be given an arraignment.

32.     For the duration of the time Saulnier spent handcuffed in the Hospital, NYPD officers declined to issue Saulnier a Desk Appearance Ticket.

33.     For the duration of the time Saulnier spent handcuffed in the Hospital, NYPD officers declined to arraign Saulnier.

34.     For the duration of the time Saulnier spent handcuffed in the Hospital, NYPD officers declined to conduct a probable cause hearing for Saulnier.

35.     For the duration of the time Saulnier spent in the Hospital, NYPD officers declined to remove Saulnier's handcuffs.

36.     Saulnier was first arraigned on or about April 25, 2019.

37.     For the duration of the time Saulnier spent handcuffed in the Hospital, Saulnier repeatedly complained to NYPD officers that his handcuffs were too tight and were causing him significant pain, to no avail. No one would help him.

38.     While Saulnier was handcuffed in the Hospital, numerous calls were made to various individuals in the 45th NYPD Precinct and requested that Saulnier's handcuffs be loosened, since they were too tight and were causing him pain.

39.     For the duration of the time Saulnier spent handcuffed in the Hospital, NYPD

officers declined to loosen Saulnier's handcuffs. On the contrary, after hearing of Saulnier's complaints that the handcuffs were too tight, NYPD officers tightened Saulnier's handcuffs.

## DAMAGES

40.     As a direct and proximate result of the acts of Defendants, Plaintiff suffered the following injuries and damages:

   a.     Violation of his rights pursuant to the Fourth Amendment to the United States Constitution to be free form an unreasonable search and seizure of his person;

   b.     Violation of his right to Due Process of Law under the Fourteenth Amendments to the United States Constitution.

   c.     Violation of his New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

   d.     Violation of his New York State Constitutional rights under Article 1, Section 6 to due process;

   e.     Physical pain and suffering;

   f.     Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety; and

   g.     Loss of liberty.

## FIRST CAUSE OF ACTION
(42 USC §1983)

41.     Plaintiff hereby repeats and realleges the allegations contained in Paragraphs "1" through and including "40" as though fully set forth herein.

42.     Defendants have deprived plaintiff of his civil, constitutional and statutory rights under color of law and have conspired to deprive him of such rights and are liable to plaintiff under 42 USC § 1983.

43.    Defendants' conduct deprived Plaintiff of his right to be free of unreasonable searches and seizures, pursuant to the Fourth Amendment of the United States Constitution.

44.    Defendants' conduct also deprived Plaintiff of his right to due process of law pursuant to the Fourteenth Amendment of the United States Constitution.

45.    Defendants falsely arrested Plaintiff and failed to intervene in each other's obviously illegal actions.

46.    Plaintiff has been damaged as a result of Defendants' wrongful acts.


## SECOND CAUSE OF ACTION
(MUNICIPAL AND SUPERVISORY LIABILITY)

47.    Plaintiff hereby repeats and realleges the allegations contained in Paragraphs "1" through and including "46" as though fully set forth herein.

48.    Defendants have deprived plaintiff of his civil, constitutional and statutory rights under color of law and have conspired to deprive him of such rights and are liable to plaintiff under 42 USC § 1983.

49.    The City is liable for the damages suffered by plaintiff as a result of the conduct of its employees, agents, and servants, in that, after learning of its employees' violation of plaintiff's constitutional rights, it failed to remedy the wrong. The City created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and have been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force and false arrests by its police officers but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiffs' constitutional rights in this case.

50.     The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate Plaintiffs' civil rights, without fear of reprisal.

51.     Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

52.     The City is liable for the damages suffered by plaintiff as a result of the conduct of its employees, agents, and servants, in that, after learning of its employees' violation of plaintiffs' constitutional rights, it failed to remedy the wrong; The City created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force and false arrests by its police officers but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of Plaintiff's constitutional rights in this case.

### **THIRD CAUSE OF ACTION**
(CONSPIRACY)

53.     Plaintiff hereby repeats and realleges the allegations contained in Paragraphs "1" through and including "52" as though fully set forth herein.

54.     Defendants agreed to violate the Plaintiff's rights in the manner described above.

55.     Further Defendants' made an agreement to attempt to cover up the assault committed against Plaintiff by the Police Officers in the hospital and elsewhere.

56.     Defendants took action in furtherance of this agreement by arresting

Plaintiff and attempting to bring charges against him.

57.    Plaintiff was injured as a result of Defendants' conspiracy.

### FOURTH CAUSE OF ACTION
(CONSTITUTIONAL TORT)

58.    Plaintiff hereby repeats and realleges the allegations contained in Paragraphs "1" through and including "57" as though fully set forth herein.

59.    The above paragraphs are incorporated herein by reference.

60.    Defendants, acting under color of law, violated plaintiff's rights pursuant to §§ 5, 6 and 12 of the New York State Constitution.

61.    A damages remedy here is necessary to effectuate the purposes of §§ 5, 6 and 12 of the New York State Constitution, and appropriate to ensure full realization of Plaintiff's rights under those sections.

### FIFTH CAUSE OF ACTION
(NEGLIGENT HIRING & RETENTION)

62.    Plaintiff hereby repeats and realleges the allegations contained in Paragraphs "1" through and including "61" as though fully set forth herein.

63.    Defendant City, through the NYPD, owed a duty of care to Plaintiff to prevent the loss of liberty and mental abuse sustained by Plaintiff.

64.    Defendant City, through the NYPD, owed a duty of care to Plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a position similar to Plaintiff's as a result of this conduct.

65.    Upon information and belief,  the NYPD Officers were incompetent and unfit for their positions.

66.     Upon information and belief, Defendant City knew or should have known through exercise of reasonable diligence that the officer Defendants were potentially dangerous.

67.     Defendant City's negligence in hiring and retaining the NYPD Officers proximately caused Plaintiff's injuries.

Due to the Defendant City's negligent hiring and retention of the NYPD Officers, Plaintiff incurred damages described above.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

(a)     In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

(b)     Awarding Plaintiff's punitive damages in an amount to be determined by a jury;

(c)     Awarding Plaintiff's reasonable attorneys' fees, costs and disbursements of this action; and

(d)     Granting such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Kevin Saulnier, an individual, hereby demands a jury trial.

Dated:          September 4, 2020
                Astoria, New York

Respectfully submitted,

**PARDALIS & NOHAVICKA, LLP**

/s/Joseph D. Nohavicka

Joseph D. Nohavicka, Esq. (JN2758)
*Attorneys for Plaintiff*
KEVIN SAULNIER
35-10 Broadway, Ste. 201
Astoria, NY 11106
Telephone: (718) 777-0400
Facsimile: (718)777-0599
jdn@pnlawyers.com